IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROEHL TRANSPORT, INC.,

        Plaintiff and Counter Defendant,

v.

JEFFREY MORRISON,

        Defendant and Counter Claimant.

OPINION AND ORDER

18-cv-511-slc

---

       This declaratory judgment action arising in diversity involves a dispute between a trucker, Jeffrey Morrison, and a trucking company, Roehl Transport, Inc., over whether the company was obliged to provide underinsured motorist insurance coverage to Morrison for injuries he suffered while hauling freight for the company. This dispute has spawned a host of motions: Roehl has moved to dismiss Morrison's counterclaim for benefits and for judgment on the pleadings, Morrison has moved for summary judgment, and Roehl has moved to strike Morrison's amended counterclaim and his affidavit. Dkts. 12-14, 21-22.

       Looking at the number and length of the parties' submissions, one might think this is a complicated case. It isn't. Roehl Transport had no obligation under state or federal law to provide the insurance coverage Morrison is seeking. Accordingly, I am granting Roehl Transport's motions for judgment on the pleadings and to dismiss the counterclaim, and I am denying Morrison's motion for summary judgment. Morrison's amended counterclaim will be stricken as untimely and futile.

       One preliminary evidentiary matter requires mention: the facts set out below are drawn from the parties' pleadings, which include by reference two contracts: (1) an Owner Operator Operating Agreement ("Operating Agreement") between Morrison and plaintiff, Roehl Transport;

and (2) a Lease Agreement entered into between Morrison and Roehl Leasing, LLC, a nonparty to this action. The only other evidence in the record is an affidavit from Morrison, *see* attachment to dkts. 15, 16, 23, but I am granting Roehl Transport's request to strike it. Dkt. 22. As Roehl points out, several paragraphs of Morrison's affidavit contain inadmissible hearsay. Further, to the extent that Morrison describes the parties' discussions leading up to execution of the Operating Agreement, such discussions constitute improper parol evidence that the court may not consider in light of the agreement's merger clause, which I discuss below. *See, e.g., Dairyland Equip. Leasing, Inc. v. Bohen*, 94 Wis.2d 600, 607, 288 N.W.2d 852 (1980) (when parties to contract embody their agreement in writing and intend the writing to be the final expression of their agreement, terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.).[1] The remainder of the affidavit consists of facts that bolster Morrison's argument that Florida, not Wisconsin, law should apply, but those facts are irrelevant because his claim for UM benefits fails even under Florida law. Therefore, I have not considered Morrison's affidavit in deciding the pending motions.

The following material facts are undisputed:

---

[1] For what it's worth, Morrison does not develop any argument suggesting that he did not understand the terms of the Operating Agreement or otherwise challenge its validity. To the contrary, he appears to concede its validity insofar as he argues that Roehl breached it.

FACTS

Plaintiff and counterclaim defendant Roehl Transport, Inc. is incorporated in Wisconsin with its principal place of business in Wisconsin. Defendant and counterclaim plaintiff Jeffrey Morrison is a resident of Florida.

In April 2013, Morrison entered into agreements with two different Roehl entities, only one of which is a party to this action. First, Morrison entered into an Equipment Lease Agreement to lease a 2012 International ProStar tractor from Roehl Leasing, LLC, the non-party. *See* Equipment Lease with Trac Option, at 1, 13, attached to Answer to Counterclaim, dkt. 9-2. Under the terms of the Equipment Lease, Morrison—as the lessee—was required to maintain property insurance on the tractor, and he agreed to indemnify and hold harmless Roehl Leasing—the lessor—for any claims that might arise from Morrison's operation of the tractor. *Id*. at 7. Under paragraph 5 of the Equipment Lease, Morrison agreed to enter into an Owner Operator Operating Agreement with Roehl Transport, Inc., for the purpose of providing transportation services pursuant to the Federal Highway Administration's leasing regulations.

After leasing the tractor from Roehl Leasing, Morrison entered into an Owner Operator Operating Agreement ("Operating Agreement") with Roehl Transport—the plaintiff in this action—under which Morrison (the "Owner Operator") leased the tractor ***to*** Roehl Transport (the "Carrier") and agreed to "render motor freight transportation services on behalf of [Roehl Transport]." Op. Agreement, attached to Answer to Countercl., dkt. 9, Exh. A, at 1. The Operating Agreement explicitly follows and incorporates the duties and requirements set forth in the Federal Motor Carrier Safety Act Leasing Regulations, 49 U.S.C. § 376 *et seq.*. *Id*.

3

In paragraph 8 of the Operating Agreement, the parties agreed as follows:

> 8. General Insurance Requirements
>
> The responsibilities and obligations between Carrier and Owner Operator involving insurance shall be as set forth in **Exhibit E**. Carrier shall have no insurance responsibilities pertaining to Owner Operator or the Equipment other than those expressly stated in this Agreement or mandated by law.

In Exhibit E, titled "Insurance," Roehl Transport agreed to "carry and maintain in force and effective insurance coverage for the protection of the public pursuant to 49 U.S.C. § 13906 . . . with regard to liability for personal and bodily injury (including death), property damage and . . . cargo damage at all times while the Equipment is being operated on behalf of Carrier." *Id.*, Exh. E, at ¶1. Morrison agreed to maintain insurance coverage for liability and property damage when the equipment was not being operated, worker's compensation insurance, and rider insurance. *Id.* at ¶2(a)-(c). Paragraph 2(d) of Exhibit E further provides:

> Other Insurance
>
> In addition to the insurance coverage's [*sic*] required under this Agreement, it is **Owner Operator**'s responsibility to procure, carry and maintain any fire, theft, loss of business, **uninsured and/or underinsured motorist**, and physical damage (collision), or other insurance coverage that Owner Operator may desire for the Equipment of for Owner Operator's health care or other needs. Carrier has no responsibility to procure, carry, or maintain any insurance covering loss of or damage to Owner Operator's Equipment, trailer, or other property. Owner Operator acknowledges that Carrier may, and Owner Operator hereby authorizes Carrier to, waive and reject no-fault, uninsured, and underinsured motorist coverage from Carrier's insurance policies to the extent allowed under Wisconsin law (or such other state law where the Equipment is principally garaged), and Owner Operator shall cooperate in the completion of all necessary documentation for such waiver, election, or rejection.
>
> *Id.* at ¶2(d) (emphasis added).

Paragraph 3 of Exhibit E provides that Morrison could obtain the required insurance coverages from any carrier of his choosing, or he could purchase coverage through Roehl Transport's Carrier Insurance Program. Paragraph 3(a) provides that "[n]othing herein shall be construed as requiring Owner Operator to purchase such insurance coverage through Carrier or through Carrier's recommended insurance providers, agents or underwriters," explaining that Roehl had agreed to make such insurance coverages available for the purposes of "affording Owner Operator the favorable terms or rates which may not be otherwise available to Owner Operator."

The Operating Agreement includes an Entire Agreement clause, which states:

> This Agreement (including the Exhibits and Appendices and any addendums) constitutes the entire Agreement and understanding between the parties pertaining to the subject matter contained herein and fully replaces and supersedes all prior and contemporaneous agreements, representations, and understandings. This Agreement shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties, except as otherwise provided with respect to changes in compensation and deductions in the Appendices and Exhibits hereto.

*Id*. at ¶38.

Pursuant to Federal Motor Carrier Safety Administration regulations and federal law, Roehl Transport maintains a certificate of self-insurance of $1 million under the federal Uniform Registration System. This certificate of self-insurance was issued in the state of Wisconsin. *See* Cert. of Self-Insurance, dkt. 1, Ex. A. Roehl Transport does not provide underinsured or uninsured motorist coverage as part of its self-insurance program, nor was it required to do so under federal law.

On January 30, 2015, Morrison was operating his tractor for the benefit of Roehl Transport in Henry County, Georgia when he was involved in an accident with Charlie Jefferies. Morrison was injured in this accident. Jefferies subsequently filed a lawsuit against Morrison; Morrison counterclaimed, alleging that Jefferies's negligence caused the accident and Morrison's injuries. After settling with Jefferies's insurance carrier for the policy limits, Morrison filed a demand against Roehl Transport, seeking $1 million in uninsured/underinsured motorist ("UM") coverage under Roehl's self-insurance plan.

This prompted Roehl Transport to file suit in the Northern District of Georgia, seeking a declaration that it neither provided nor was it required to provide such coverage to Morrison. Dkt. 1. Morrison counterclaimed for the UM coverage, asserting that Florida law requires vehicle lessors providing automobile liability insurance for the benefit of lessees to also provide uninsured motorist coverage. Dkt. 8. Roehl subsequently moved to dismiss Morrison's counterclaim for benefits and for judgment on the pleadings, and Morrison moved for summary judgment. Dkts. 12-14. Morrison also filed an amended counterclaim. Dkt. 17.

In an order entered on June 26, 2018, the district court for the Northern District of Georgia found that because the parties' operating agreement contains a choice of law and forum provision requiring the application of Wisconsin law, the case should be transferred to this court. Dkt. 30. The parties have agreed that no formal discovery is necessary and that this case can be resolved on the pending motions. Dkt. 34, ¶4.

OPINION

As noted above, there is no dispute that Roehl Transport was not required under federal law to provide UM coverage to Morrison. There also is no dispute that Roehl Transport was not

required to provide such coverage under Wisconsin law. As Roehl points out, Wisconsin does not require self-insured entities to provide uninsured motorist coverage. *Classified Ins. Co. v. Budget Rent-A-Car*, 186 Wis. 2d 478, 483-84, 521 N.W. 2d 177, 179 (Ct. App. 1994) (finding that Wis. Stat. § 632.32, Wisconsin's statute requiring insurance companies issuing policies in Wisconsin to provide uninsured motorist coverage, was "inapplicable to . . . a self-insured entity.").

Given that the parties' agreement calls for Wisconsin law to govern any disputes arising thereunder, one would think that settles the question. However, Morrison insists that Florida law applies because he lives in Florida, his tractor was primarily garaged there, and he executed many of the terms of the contract there. Dkt. 14, at 7-11.

It is unnecessary to delve into the choice of law question because Morrison cannot prevail even under Florida law. As support for his claim that Roehl Transport was required to offer UM coverage, Morrison relies on Fl. St. § 627.727, which provides:

> When a motor vehicle is leased for a period of 1 year or longer and the lessor of such vehicle, by the terms of the lease contract, provides liability coverage on the leased vehicle, the lessee of such vehicle shall have the sole privilege to reject uninsured motorist coverage or to select lower limits than the bodily injury liability limits, regardless of whether the lessor is qualified as a self-insurer pursuant to s. 324.171.

This statute appears to be broader than Wisconsin's in that it does not exempt self-insurers. Nonetheless, it is of no help to Morrison. Under its plain terms, the statute applies only when the "*lessor* . . . provides liability coverage on the leased vehicle[.]" Under the terms of his Operating Agreement with Roehl Transport, however, Roehl Transport is the *lessee* and Morrison is the *lessor* of the vehicle. Operating Agreement, ¶3(a) ("In rendering Freight Transportation Services during the term of this Agreement, Owner Operator shall lease *to* Carrier the tractors,

7

trailers and other related equipment . . .") (emphasis added). As the lessee, Roehl Transport had no obligation under Florida's statute to provide UM coverage to Morrison. Instead, as expressly called for under the parties' Operating Agreement, it was *Morrison*'s "responsibility to procure, carry and maintain any fire, theft, loss of business, *uninsured and/or underinsured motorist*, and physical damage (collision), or other insurance coverage that Owner Operator may desire for the Equipment of for Owner Operator's health care or other needs."

Recognizing his error, Morrison takes a new approach in his response briefs, attempting to cobble together a coverage theory by pointing to the Lease Agreement between Morrison and a different entity, Roehl Leasing. This agreement, so the theory goes, imposed insurance responsibilities on Roehl *Leasing* that Roehl *Transport* "assumed" when it entered into the Operating Agreement with Morrison.

Neither plank of this argument is sound. First, nothing in the Leasing Agreement required Roehl Leasing to provide UM coverage to Morrison. Morrison relies on Paragraph 13, but that paragraph required Morrison, as the lessee in that contract, to maintain "insurance covering the Equipment[.]" There are no other provisions concerning insurance in the Lease Agreement. Moreover, to the extent Morrison appears to suggest that Roehl Leasing, the lessor, was required to provide UM coverage under Fl. Stat. 627.727, he is incorrect: under the statute, a lessee has the sole right to waive UM coverage only when "the lessor of such vehicle, by the terms of the lease contract, provides liability coverage on the leased vehicle." Morrison does not point to any terms in the Leasing Agreement that required Roehl Leasing to provide liability coverage on the leased tractor, and I have found none.

8

Nor is there any support for Morrison's argument that "Roehl Transport contractually stands in the shoes of Roehl Leasing." Dkt. 15, at 5; Dkt. 16, at 7. Morrison hangs his legal hat solely on the ground that, under his Leasing Agreement with Roehl Leasing, he was required to enter into an Operating Agreement with Roehl Transport, Inc.[2] Yet Morrison never explains why that condition is tantamount to an agreement by Roehl Transport to assume Roehl Leasing's obligations–which say nothing about UM coverage in any event–under the Leasing Agreement. Certainly, there is no language in either contract to this effect.

To the contrary, the Operating Agreement between Morrison and Roehl Transport contains a "merger" clause that expressly negates "all prior and contemporaneous agreements, representations, and understandings." When, as here, the contract contains language that "unambiguously demonstrates the parties' intent to exclude additional understandings or agreements not contained in the [written instrument]," the court may not consider additional agreements not contained in the written contract. *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶ 36, 330 Wis. 2d 340, 357–58, 793 N.W.2d 476, 484–85. In short, there is simply no basis to import any obligations from the Leasing Contract between Morrison and Roehl Leasing into the Operating Agreement between Morrison and Roehl Transport.

The upshot is that Morrison has no legal grounds to stand on. It does not help him to attempt to reframe his claim as a breach of contract claim, as he does in his belated Amended Counterclaim, dkt. 17. Morrison argues that Roehl Transport breached its promise in paragraph 8 of the Operating Agreement to comply with its insurance obligations as "mandated by law,"

---

[2] Morrison also asserts, without support, that he was required under the Operating Agreement to "purchase insurance from Roehl Transport." This is plainly incorrect. As noted in the facts, Morrison had the option of purchasing various types of insurance through Roehl Transport, but he was not required to do so.

9

but this circles directly back to Morrison's Florida law argument, which has no traction. Accordingly, I am granting Roehl Transport's motion to strike the amended counterclaim on the grounds that it is not only untimely but also futile. The remainder of Roehl's motions will be granted, and Morrison's motion must be denied.

ORDER

IT IS ORDERED THAT:

1. Plaintiff Roehl Transport, Inc.'s motion to strike the affidavit of Jeff Morrison, dkt. 22, is GRANTED;

2. Plaintiff's motion for judgment on the pleadings, dkt. 13, is GRANTED;

3. Plaintiff's motion to dismiss the counterclaim, dkt. 12, is GRANTED;

4. Defendant's motion for summary judgment, dkt. 14, is DENIED; and

5. Plaintiff's motion to strike the amended counterclaim, dkt. 21, is GRANTED.

The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 7th day of November, 2018.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge